UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANGELINA I. ALAM, | No. CV 05-4828-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 1, 2005, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 17, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 29, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 17, 1948. [See Administrative Record ("AR") at 128, 275.] She attended high school in Pakistan, and after moving to the United States, attended college for a time. [AR at 171, 275.] Plaintiff worked from 1989 to 1999 as a registered nurse. [AR at 135, 276-77.]

On April 25, 2001, plaintiff filed an application for Disability Insurance Benefits, alleging that she has been unable to work since July 11, 1999, due to extreme pain in the joint of her right thumb. [AR at 128-30, 164-65.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on December 10, 2002, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 310-25.]

On December 30, 2002, the ALJ found that plaintiff was disabled. [AR at 39-42.] On April 3, 2003, pursuant to its own "motion review," the Appeals Council determined that the December 30, 2002, decision did not provide appropriate rationale to support the ALJ's finding regarding plaintiff's work ability, and remanded the case back to an ALJ for further consideration. [AR at 87-89.]

A second hearing was held on October 25, 2004, at which plaintiff again appeared with counsel and testified on her own behalf. A vocational expert also provided testimony. [AR at 271-309.] On January 10, 2005, the ALJ determined[1] that plaintiff was not disabled because she can perform medium work with certain restrictions.[2] [AR at 17-30.] When the Appeals Council denied

---

[1] In reaching his determination, the ALJ also considered plaintiff's March 16, 2000, application for benefits, which had been denied. [AR at 18.]

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). The ALJ also found that plaintiff can stand and/or walk, as well as sit, without limitations. On a frequent basis, she can climb, balance, stoop, kneel, crouch, and crawl. On an occasional basis, she can perform gross and fine manipulation. [AR at 26.]

review on May 6, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 10-13.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

1  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must
2  determine whether the claimant is currently engaged in substantial gainful activity; if so, the
3  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in
4  substantial gainful activity, the second step requires the Commissioner to determine whether the
5  claimant has a "severe" impairment or combination of impairments significantly limiting her ability
6  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.
7  If the claimant has a "severe" impairment or combination of impairments, the third step requires
8  the Commissioner to determine whether the impairment or combination of impairments meets or
9  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
10 Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.
11 If the claimant's impairment or combination of impairments does not meet or equal an impairment
12 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
13 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
14 and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform
15 past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie
16 case of disability is established.  The Commissioner then bears the burden of establishing that
17 the claimant is not disabled, because she can perform other substantial gainful work available in
18 the national economy.  The determination of this issue comprises the fifth and final step in the
19 sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
20 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  [AR at 19, 28.]  At step two, the ALJ concluded that plaintiff has the severe impairment of osteoarthritis of the trapeziometacarpal joint of the right thumb.  [AR at 19, 21, 28.]  At step three, the ALJ found that the impairment does not meet or equal any impairments in the Listings.  [AR at 21, 28.]  The ALJ further determined that plaintiff retains the

residual functional capacity[3] to perform medium work with certain restrictions. [AR at 26, 28-29.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 26-27, 29.] At step five, the ALJ concluded that there are a significant number of jobs in the national economy that she can perform. [AR at 28-29.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) properly determine the RFC, and (2) properly determine alternative work that plaintiff can perform. Joint Stipulation ("Joint Stip.") at 4. After a review of the record, the Court concludes that the ALJ, in formulating the RFC, erred in assessing plaintiff's credibility. For the reasons explained below, this matter is remanded for further proceedings.

**THE ALJ IMPROPERLY REJECTED PLAINTIFF'S TESTIMONY**

The record shows that plaintiff has been diagnosed with osteoarthritis of the trapeziometacarpal joint of the right thumb. [AR at 242.] Plaintiff testified at the October 25, 2004, hearing that the condition was painful and significantly affected her ability to use her right hand (which is her dominant hand) when completing day to day tasks. According to plaintiff, she cannot use her right hand to twist off the tops of bottles and jars, she has difficulty with buttons and zippers, she cannot tie her shoe laces, she drops dishes when washing them because of difficulty grasping, and she can only write for a short period of time due to her difficulty with pinching and extending her thumb. [AR at 279-85.] She alleged that her pain, which is limited to her right thumb, gets more severe the more she uses her thumb. [AR at 282.] She estimated that she can take part in about one-half hour of activity and then needs to rest her thumb for three to four hours while she massages it and takes aspirin. [AR at 283.] She tried a cortisone injection, but it provided no

---

[3] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

relief. [AR at 283.] Although surgery has been recommended, she alleged she is allergic to anesthesia. [AR at 284.] Due to her allergies to medications, she is only able to take aspirin for the pain, although acupuncture and the use of a thumb splint have also helped. [AR at 283, 290.]

The ALJ considered plaintiff's complaints, and determined they were not credible. [AR at 25-26.] To support this determination, the ALJ relied on the following: (1) although plaintiff testified that pain spread to her upper right extremity as well as her left hand, there is no supporting medical evidence for these allegations; (2) her treatment history has been conservative and is inconsistent with her complaint of disabling pain; and (3) her physical activities reflect no disability. [AR at 25-26.]

Plaintiff asserts that the ALJ's reasons for disbelieving her testimony were legally insufficient. Joint Stip. at 11-13. The Court agrees. As shown by the record, plaintiff produced medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms. Medical findings are therefore not required to support the alleged severity of pain or other symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can therefore reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient."

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, because there is no evidence of malingering, the ALJ's grounds for rejecting plaintiff's credibility needed to be clear and convincing to withstand remand. Benton, 331 F.3d at 1040. Taking each reason set forth by the ALJ in turn, the Court concludes they are not legally sufficient as explained below.

As one basis for finding plaintiff not credible, the ALJ noted that despite her complaint that pain has spread to her left hand, the medical record does not support these allegations. Thus, the ALJ stated, there is no record of "persistent complaints of pain in any area of the [plaintiff's] right hand other than her thumb." [AR at 25.] At the hearing, however, plaintiff testified unequivocally that the pain was limited to her right thumb. [See AR at 289-90.] Plaintiff's pain questionnaire indicates the same. In response to the question of "What brings the pain on?" plaintiff wrote: "The more I use my [right] hand, [es]specially [right] thumb to hold object or open bottle [sic]." [AR at 157.] Her disability applications from both 2000 and 2001 list her right hand thumb pain as the only impairment. [AR at 134, 165.] It follows, therefore, that the absence of supporting medical evidence for complaints of pain affecting other parts of her body is immaterial and should not serve to discredit plaintiff's primary allegations of pain and limited use of her right thumb.[4]

The ALJ also premised his credibility determination in part on plaintiff's physical activities, specifically finding that plaintiff's gardening and treadmill exercise negate a finding of disability.

---

[4] In reference to the left hand and upper extremity complaints, the ALJ cites to, inter alia, plaintiff's Reconsideration Disability Reports, which state that she is experiencing "progressive pain, deterioration, weakness and dysfunction of the right upper extremity with severe inability functionally to use her hand, fingers, [and] wrist" along with "pain and degeneration in the left hand as well." [See AR at 174, 178.] It appears from the wording and the different handwritings on the Disability Reports that the documents may not have been filled out by plaintiff, but perhaps only signed by her. Accordingly, although the Court acknowledges that the left hand complaint is inconsistent with plaintiff's testimony and pain questionnaire statements regarding her right thumb condition, it is clear from her testimony that her pain stems from her right thumb only, and that is the only impairment for which she is pursuing her claim of disability.

7

[AR at 26.]  Engaging in some activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). Rather, an ability to take part in physical pursuits bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations.  See Reddick, 157 F.3d at 722.  The Ninth Circuit has held that the ALJ may reject a claimant's symptom testimony if he "is able to spend a substantial part of [his] day performing ... activities that are transferable to a work setting." Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

The Court is not convinced by the ALJ's reasoning that plaintiff's treadmill exercise and gardening controvert her testimony.  Considering that plaintiff's impairment is limited to her right thumb, the fact that she can walk or run on a treadmill does not have any bearing on the complaints at issue.  Moreover, the Court finds that the reference to plaintiff's gardening activities, which comes from Dr. Richard Zeiss' July 2000 medical note, is too general and vague to ascertain with any specificity the extent to which she may be using her right thumb and hand.[5] There was no follow-up to determine if her activities in the garden were limited to left-handed watering or picking flowers, or the more intense work of two-handed weeding, mowing and raking. Nor is it apparent if she spends a "substantial part" of her day performing any physical task with her affected thumb that translates to the work environment.  See Smolen, 80 F.3d at 1284 n.7. For these reasons, the ALJ has not convincingly shown that the alleged activities are inconsistent with the alleged limitations so as to support a finding that plaintiff is not disabled.

In rejecting plaintiff's contentions, the ALJ also stated that plaintiff accepted only conservative medical treatment and that her treatment history overall is inconsistent with her allegations of disabling pain. [AR at 26.] The ALJ pointed out that plaintiff last saw both her

---

[5] The pertinent portion of the report by Dr. Zeiss states as follows: "[Plaintiff] is now 51 years of age and she is active physically with her treadmill exercise, her gardening and she is free of cardiovascular symptoms." [AR at 223.]

acupuncturist and Dr. Zeiss in July 2000, and that her sole appointment with Dr. Myles Cohen, a hand specialist, for a consultive evaluation took place in February 2001. The ALJ also noted that plaintiff refused steroid injections, and although she testified that she refused hand surgery as well due to an allergy to anesthesia, there is no indication in the record of this allergy. [Id.]

The Court finds the ALJ's characterization of plaintiff's medical treatment somewhat misleading. For example, although the ALJ faulted plaintiff for discontinuing acupuncture in July 2000, plaintiff testified at the October 2004 hearing that she was still seeing her acupuncturist to address her thumb condition. [AR at 290.] Also contrary to the ALJ's assertion, the record shows that in August 1999 she submitted to a steroid injection, but because it exacerbated her symptoms, no subsequent injections were administered. [AR at 201, 207.] According to plaintiff, she takes only aspirin to combat her pain as she is allergic to other medications. [AR at 290.] There are numerous references in the record reflecting that plaintiff is allergic or otherwise "sensitive" to medications. [See, e.g., AR at 202, 223, 260.]

As for plaintiff's explanation that she refused to undergo hand surgery on account of an allergy to anesthesia, the ALJ is correct that there is nothing in the record substantiating this particular allegation. The Court is not persuaded that this apparent contradiction by itself, however, is enough to discredit the entirety of plaintiff's testimony given that she continues to attend both chiropractic and acupuncture therapy, uses a splint, and takes aspirin to manage her pain.[6] In light of this record, the Court cannot conclude that plaintiff's treatment has been inconsistent with her allegations of disabling pain, and finds that the ALJ's characterization of it as such is not fully supported by the evidence.

For the foregoing reasons, the Court finds that the ALJ improperly rejected plaintiff's complaints that, with respect to her right hand, she has extreme difficulty twisting objects, has very limited grasping abilities, can only take part in thirty minutes of activity before needing to rest her

---

[6] Under the Regulations, failure to follow a prescribed course of treatment "without a good reason" will result in a determination of not disabled. See 20 C.F.R. § 404.1530(b). With this in mind, the ALJ upon remand should ascertain whether plaintiff has any medical support establishing that she is in fact allergic to anesthesia to determine whether this excuse is in fact a "good reason" as contemplated by the Regulations.

hand, has difficulty extending her right thumb, and has very limited ability to use her right thumb for pinching. [AR at 280-85.] See Reddick, 157 F.3d at 723.

Some courts, after finding the ALJ has improperly rejected relevant evidence, have credited the improperly rejected evidence as true and remanded for an award of benefits. See Lester, 81 F.3d at 834; see also Smolen, 80 F.3d at 1292 (remand for benefits appropriate "where the record has been fully developed and where further administrative proceedings would serve no useful purpose"). Other courts, however, are "not convinced that the 'crediting as true' doctrine is mandatory in the Ninth Circuit." See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for reevaluation of plaintiff's pain testimony); see also Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (remanding for reconsideration where, inter alia, ALJ "did not properly reject [the plaintiff's] subjective complaints").

In this matter, "outstanding issues must be resolved before a proper determination can be made." See Bunnell, 336 F.3d at 1115. In particular, the issue remains as to whether plaintiff would be able to work despite her professed limitations. Although the vocational expert testified that no jobs were available that would allow plaintiff to use her right hand during intervals of only thirty minutes [AR at 306], it was not established if positions exist that would require no use of the right thumb, so that the thirty minute activity limit would not preclude plaintiff from working.[7] Because of this issue, the Court cannot find that "the record has been fully developed and ... further administrative proceedings would serve no useful purpose." See Smolen, 80 F.3d at 1292. Consequently, the Court will not grant plaintiff's request to remand the action for benefits, but will instead remand the matter for further proceedings for the following reasons: (1) to allow the ALJ to reconsider plaintiff's subjective complaints and make specific findings; and (2) in the event plaintiff's allegations are credited as true, to determine whether sufficient employment opportunities are nevertheless available. Because the result of this determination may impact

---

[7] In the hearing decision, the ALJ observes that, pursuant to Social Security Ruling 83-12, "an amputation above the elbow would limit a person to light work activity with additional limitations due to inability to perform bimanual tasks." [AR at 25.] Thus, even if plaintiff cannot use her right hand for any activities, positions might still be available to someone with her limitations.

other parts of the ALJ's analysis, such as the formulation of the RFC and the identification of appropriate employment positions, plaintiff's remaining arguments will not be addressed at this time.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further assess plaintiff's subjective complaints and the existence of jobs in the national economy that plaintiff may be able to perform. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: July 3, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE